MARY CHAMBERLAIN, respondent,

*v.*

STROUD H. CHAMBERLAIN, appellant.

[Argued March 29th, 1905. Decided November 27th, 1905.]

When a man and a woman intend to marry and live together as husband and wife, but their intent is frustrated by the existence of some unknown impediment, when the impediment is removed and it is shown that the same intent continues, their relations are lawful.

On appeal from a decree in chancery advised by Vice-Chancellor Stevenson,. whose opinion is reported *ante p. 414.*

Mr. *Elmer King,* for the appellant.

Mr. *Peter J. McGinnis* and Mr. *John M. Ward,* for the respondent.

The opinion of the court was delivered by

GARRETSON, J.

The complainant filed her bill against the defendant under the twentieth section of the Divorce act, alleging that her husband has left her and refuses to support her, and praying for support and maintenance.

The only defence which it is necessary to consider is, that the defendant is not the husband of the complainant, and therefore is not liable to support her.

The complainant, under her maiden name of Mary Walsh, married William Tissell March 29th, 1871.

William Tissell left Mary Tissell March 12th or 15th, 1877, and went to St. Louis and thence to Oak Grove, Texas.

About July, 1877, a letter was received by Mary Tissell from William Tissell. Mary Tissell, under the name of Mary Walsh, was married to Stroud H. Chamberlain April 4th, 1880, by a clergyman in the city of Brooklyn.

On May 8th, 1880, the complainant, under the name of Mary Tissell, filed a petition for divorce, upon the ground of desertion, against William Tissell, and decree was granted thereon June 30th, 1881.

Prior to the marriage of the complainant and defendant in 1880 they both believed that William Tissell was dead, and they continued in that belief until after the present suit was instituted, when there was evidence to show that he was still alive. If William Tissell was alive in April, 1880, when the complainant was married to the defendant, that marriage was invalid.

When the impediment of her former marriage was removed

by the decree of divorce, then the complainant might legally become the wife of the defendant.

The complainant testified that, while she believed Tissell was dead when she married Chamberlain, she procured the divorce from Tissell for the reason that she and Chamberlain talked of getting a little property, and she was afraid that something might occur that might do harm in that way.

After the complainant and defendant were married in 1880 they lived together as husband and wife until the separation, which occurred shortly before the commencement of this suit; each supposed that the relationship between them was lawful, and that of husband and wife; he addressed her and introduced her as his wife; she addressed him and introduced him as her husband; they gave a mortgage upon property of the defendant June 25th, 1885, in which she is described as his wife and which she acknowledged as his wife.

From the time of the marriage in 1880 to the commencement of the suit it was the intention of both the complainant and the defendant, as they state, that their relations should be lawful and not meretricious; they were by law meretricious, however, down to the time of the divorce of Tissell, because of Tissell living, but the impediment which rendered them meretricious having been removed, and the lawful intent still continuing, it would be unjust not to give that intent effect if possible.

In connection with the intent of both parties, as admitted by them, we have evidence to show that they manifested that intent to others after the divorce in such way as to fully establish the legality of their relationship.

Emily J. Campbell testifies that the defendant on one occasion, in presence of his wife, said: "Here is Mary's divorce from her first husband. I would not have shown it to you, but you knew her first husband, and I want you to know she is my. legal wife." Mary Booth testified to an occasion when both were present and she had been told by one of the neighbors that Mrs. Chamberlain had been divorced, and says "she felt so badly, they came down and said they had the divorce papers and were willing for us to see them, because father made the lease; they were anxious for us to know they were married," and Mr. Cham-

berlain "said she was his wife, and she felt bad and cried, and he told her not to worry."

This evidence was a manifestation of an intent to live together as husband and wife, and with the intention and the actual so living, an actual marriage is established.

In *Collins* v. *Voorhees, 47. N. J. Eq.* (*2 Dick.*) *555*, Chief-Justice Beasley, in an opinion denying a motion for a reargument, speaking of the opinion of Lord Westbury in the *Breadalbane Case,* said: "The doctrine of that case is supported by nothing that preceded or that has followed it, and is altogether anomalous, and, as it seems to me, it was properly rejected by this court. In that case the court acted upon the principle that if a man and a woman agreed to live together adulterously with a simulation of marriage, that there should be an inference of a subsequent valid marriage from the fact that such simulation had been continued after the death of the husband of the adulteress. Why such an inference is to be thus deduced is not apparent, unless it be for the promotion of adultery. By its prevalence the adulterous purpose is converted into a matrimonial purpose without a particle of reasonable evidence in support of the alleged change of intention. * * * Lord Westbury strangely compares the case before him with those instances where the parties intended, originally, to marry, and not to commit adultery, their intent being frustrated by the existence of some unknown obstacle. And yet it is presumed that no one who will look with any care into the subject will have the slightest doubt that these two classes of cases, with respect to the methods of their proof, respectively rest upon entirely different foundations, for when the parties have intended marriage, being ignorant of an existing impediment, all that is to be established by cohabitation apparently matrimonial, subsequent to the removal of such impediment, is the carrying into effect by the parties of their original purpose; but when the original purpose was to live in adultery, the evidence, under similar circumstances, must be sufficient to show an abandonment of such purpose and the execution of a new one. These lines of cases can be confounded only by want of careful observation of the principles upon which they rest." We think

that this reasoning of the chief-justice abundantly sustains the complainant's contention in this case.

The decree below is affirmed.

*For affirmance*—THE CHIEF-JUSTICE, DIXON, GARRISON, GARRETSON, PITNEY, SWAYZE, BOGERT, VREDENBURGH, VROOM, GREEN—10.

*For reversal*—None.