On March 24th, 1925, complainant and one Oscar G. Burger executed a deed ostensibly made by them as husband and wife, conveying two parcels of real estate to a dummy who in turn immediately conveyed the same parcels to the same Oscar G. Burger. The present action was brought to set aside these deeds. Oscar G. Burger died during the pendency of this action and the devisees under his will have been brought in as parties defendants in his stead.
The circumstances herein are unusual. Complainant had been married in Germany to one Roemer, who abandoned her there. After several years she came to America and thereafter, hearing and believing that Roemer had died in 1908, although in fact Roemer did not die until 1919, she contracted a common law marriage in the year 1909 with said Oscar G. Burger. In 1911, a ceremonial marriage was performed. There is no dispute that from 1909 on until Burger's death in 1927, complainant and Burger lived together and held themselves out to be and were reputed to be husband and wife. Burger died without any knowledge of any irregularity in his marriage with complainant. Burger always believed himself to be complainant's husband and, in fact, named complainant as his wife in his will, executed shortly before his death. The fact that Roemer actually survived until 1919 was established only after this action had been partially tried. The evidence satisfies me that complainant entered into her marriages with Burger in good faith and in the actual belief that Roemer was dead, although there is some unconvincing testimony by one witness to the contrary.
One of the parcels of land in controversy was purchased by complainant and Burger in 1910 and the other in 1915. In both instances deeds were taken in the names of Oscar G. Burger and Josephine Passens Burger and they were described in the deed as being husband and wife. In form, *Page 405 
therefore, they became tenants by the entirety to these two parcels, but since they were not at that time legally husband and wife, the tenancy created was that of tenants in common.Hubatke v. Meyerhofer, 79 N.J. Law 264.
Complainant practiced as a midwife until 1925, at which time complainant was arrested on charges of having performed illegal operations and lodged in jail bailable in the sum of $25,000. Burger made many attempts to secure her release on bail, among other things tendering the two properties in question, then standing in their joint names. These properties were refused by the prosecutor because complainant was herself one of the owners. Burger and complainant were informed that if the title to the properties were in the sole name of Burger that then and in that case the premises could be used as bail. Accordingly, and for the sole purpose of securing bail, it was arranged that title should be transferred through a dummy to Burger, and this was accordingly done. The complainant now seeks to set this transaction aside.
Proof is overwhelming that Burger told complainant that he would reconvey to complainant her interest in the properties after the purpose of her release had been accomplished, and there is no testimony to the contrary. The purpose of the transaction, which was solely for the purpose of technically divesting her of title so that bail might be had, was known and understood by them and by everybody connected with the transaction. It is undisputed that complainant at that time was sick and reduced to desperation by her incarceration and the serious charges then pending against her. The testimony is undisputed that she and Burger had been a loving couple and she had every reason to repose full confidence in him.
The transaction was accordingly completed by the execution of the deeds, they were deposited as bail and complainant was released. Subsequently complainant pleaded non vult to one of the charges against her and served a term in the penitentiary. Even before her release complainant had asked Burger to make a reconveyance, but he put her off and ultimately *Page 406 
died without having made a reconveyance. At the time of complainant's discharge from the penitentiary, Burger had already gone to the hospital where he died. Finding that he did not intend to reconvey, complainant brought this action against him.
From the foregoing facts, I find that as a matter of law complainant and Burger were husband and wife from the time of the death of complainant's first husband, Roemer. This follows the doctrine of Chamberlain v. Chamberlain, 68 N.J. Eq. 736. The decision is to the effect that where a man and woman go through a marriage ceremony in good faith and actually thereafter live together as husband and wife, and the intended marriage is invalidated by the existence of an unknown impediment, such as a living husband thought to be dead, the marriage becomes valid upon the removal of the impediment. Accordingly complainant and Burger were legally husband and wife in 1925, when the deed was executed, with all the consequent implications of trust and confidence which that relation involved.
The doctrine of the Chamberlain Case was expressly approved and applied by the court of errors and appeals in Robinson v.Robinson, 84 N.J. Eq. 201.
The undisputed testimony shows the clear purpose of the husband and wife in the execution of the deeds and her reliance on the declared intention of both of them that he would reconvey. Such reconveyance would have made them tenants in common if it restored them to the position in which they were before the original conveyance, since legally that was the tenancy they had, although they may have supposed themselves to be tenants by the entirety. There can be no possible doubt on the evidence that morally at least complainant was entitled to such a reconveyance.
The difficulty in this action is that the agreement between the husband and wife was not in writing. Ordinarily a trust is void unless it is evidenced by a writing. But where a fiduciary relation exists, the rules which exclude oral testimony do not necessarily apply. Lovett v. Taylor, 54 N.J. Eq. 311. *Page 407 
In that case an improvident, dissipated son, executed a deed to his mother, absolute on its face. The purpose of the transaction was to preserve the property for the son so that he should not squander it. His understanding was that he made it to his mother in trust and that she was willing at all times to convey it back. After several years the mother died and the son made claim to the property.
In awarding the property to the son, after stating that there was no fraud and that an oral trust could not be proven under the statute, the court based its decision on the intention of the parties. Vice-Chancellor Pitney says:
"There can be no doubt that the intention of all the parties was to secure George's [the son's] share in the property for his benefit and that he or his children, if he had any, were ultimately to have the title. * * * He was young, inexperienced, of slender intellect and of little or no business capacity. * * * But the question remains whether he ought, in equity, to be held bound by the deed which failed to provide for the very event which had occurred and which in the ordinary course of nature was most likely to occur, viz., the death of his mother in his lifetime without having made any proper disposition of the property which he had conveyed to her. Now, as before observed, it seems to me that a provision to define George's rights fully from the beginning might have been framed and either inserted in the original deed or embodied in the declaration of the trust and executed by Mrs. Lovett [the mother]. It further seems to me that under all the circumstances of the case it was the duty of Mrs. Lovett's counsel to have seen to it that such a provision was made and that his failure to do so ought not to be permitted to work a loss to George in the premises. In other words, that he ought not to be held bound by this deed but should be relieved from its effects either by setting it aside altogether or by a proper reformation of it."
In the case now before the court, complainant at the time of the execution of the deeds in question was an ignorant woman. She was in great distress of mind and body, and confined in jail on a serious criminal charge. The original *Page 408 
deeds to the property in question were tendered as bail but were refused because complainant, the defendant in the criminal charge, was one of the owners. The purpose of the transfer by the deeds in question was solely and only in order to place the nominal title temporarily in the husband so that the deeds might be used as security to obtain the release of complainant. This is the uncontradicted testimony of all the witnesses as to the circumstances surrounding the execution of the deeds.
In my opinion this action is strictly analogous to that ofLovett v. Taylor. It clearly appears in both actions that it was the intention that there should be a restoration of title and that the express and positive intention of the parties was not embodied in the documents executed. In the Lovett Case there seems to be even less reason for the intervention of the court of chancery to rectify the failure to express the arrangement, since in that case there was a long acquiescence by the grantor in the failure to reconvey. In both cases, however, we have an inexperienced person, in one case young and of slight business capacity and inclined to be dissipated, while in the present case we have an ignorant woman acting under great mental strain because of her incarceration, and desperate to the point where she was ready to do anything to free herself without any consideration of the consequences, and dealing with a husband in whom she had the utmost confidence.
The attitude of courts of equity in cases where a confidential relation, particularly that of a husband and wife is involved, is well set forth in the case of Hall v. Otterson, 52 N.J. Eq. 522
(at p. 526):
"The rule of equity that `he who bargains in a matter of advantage with a person placing confidence in him, is bound to show that a reasonable use has been made of that confidence' [Gibson v. Jeyes, 6 Ves. Jr. 266], applies with peculiar force to a transaction by which a husband secures from his wife a portion of her estate. The most dominant of all relations is that of the husband over the wife. There are, of course, exceptional cases when the will of the woman may control. *Page 409 
The relation is so close, the trust of the wife so absolute, her dependence so entire, it may be her fear so abject, while the dominion of the husband is so complete, his influence so insidious yet so controlling, that equity regards all such transactions with a jealous care and subjects them to the severest scrutiny. The greater the affection the more submissive the dependence, the stronger the trust the more liable is the wife to be subject to the control of her husband, and the more vigilant should the court be in protecting the weak."
The court again says, on page 528:
"In all transactions between persons occupying relations, whether legal, natural or conventional in their origin, in which confidence is naturally inspired, is presumed, or in fact reasonably exists, the burden of proof is thrown upon the person in whom the confidence is reposed and who has acquired an advantage, to show affirmatively, not only that no deception was practiced therein, no undue influence used, and that all was fair, open and voluntary, but that it was well understood."
This rule was followed and applied in Clark v. Clark,87 N.J. Eq. 504 (at p. 507), where the court says:
"Where a fiduciary relation of trust and confidence exists, the rules of evidence which exclude oral testimony to vary a written document, are superseded by the equitable rule above quoted from the Otterson Case, to the effect that a conveyance of land will not be upheld as a gift unless it is shown affirmatively that it was so intended and understood. There is no such evidence."
In my opinion, to allow these deeds to stand as an absolute conveyance without any redress to the wife, who parted with her property only upon the express intention that the transfer was purely a nominal one, would be to work, what morally would be a gross fraud upon her even though the legal elements of fraud may be absent.
Accordingly I find that the deeds should be reformed by embodying in them the intention of the parties, which was that the complainant's share of the property should be reconveyed *Page 410 
to her. But since this cannot be done, because of the death of the husband, the appropriate relief will be to set the deeds aside and declare complainant to be now the owner of an undivided half interest in the premises.
Defendants make the claim that since the husband by his will devised one-half of his real estate to complainant, the complainant is entitled only to this one-half of his estate as being all she could possibly claim. But this interpretation of the will is erroneous. The terms of the will provide in substance that one-half of the residuary estate should go to the complainant. This means that under the will she takes one-half of such estate as the husband owned free from obligation at the time of his death. As a consequence the will takes effect only on one-half of the premises in question. The will was made while the suit was pending, and there is no provision in the will referring in any way to the pendency of the action or expressing any intention on the part of the testator that the devise in the will was in any settlement of or recognition of the claims of the complainant.
The contention that complainant is affected by the clause in the will barring anyone who contests its provisions from benefiting under the will is unsound, since the present action has no relation to any contest of the will but is entirely aside from and outside of the will.
Complainant is entitled to a decree setting aside the two deeds in question and to be declared owner of an undivided one-half interest of the premises in question, and further is entitled to take under the will in accordance with its provisions, applying such provisions to the estate of the husband as established after the vacating of the two deeds. *Page 411