CHARLOTTE SMITH OR OTHERWISE CHARLOTTE HRZICH, PETITIONER–APPELLANT, v. THOMAS HRZICH AND HOBOKEN BANK FOR SAVINGS, A CORP., DEFENDANTS–RESPONDENTS.

Argued September 20, 1948—Decided October 11, 1948.

1

13

*Mr. Anthony P. LaPorta* argued the cause for the petitioner-appellant.

No appearance for the defendants-respondents.

The opinion of the court was delivered by
WACHENFELD, J.  The appellant, Charlotte Smith, seeks to annul her purported marriage to Thomas Hrzich in 1942 upon the ground that there was a common law marriage then existing and at the time undissolved.

In October 1925 she began living with Henry Heitzman and according to her petition she was "lawfully married by a form of common law marriage." She adopted and used his name and lived with him for sixteen years and nine children were born of

the marriage. In September 1941 Heitzman deserted her but no attempt was made to dissolve the bond of matrimony or to do anything in reference thereto. Shortly thereafter she met Thomas Hrzich and on October 17, 1942 went through a marriage ceremony with him at Elkton, Maryland, before a duly qualified minister and they commenced living as husband and wife. In 1946 appellant filed a petition for divorce against Heitzman upon the ground of desertion and a final decree was obtained on June 30, 1947. In that cause she did not disclose or mention the subsequent marriage to Hrzich or indicate any dissatisfaction or difficulty with it. In the same month appellant left the respondent, with whom she had been residing in Hoboken since the marriage ceremony, apparently on the advice of counsel as this petition asking for an annulment was then filed.

No children were born of the second marriage and it is alleged that at the time of the marriage to the respondent her husband of the common law marriage was then and still is alive and the common law marriage was not dissolved but subsisting as a valid marriage.

As a second cause of action the petition states that Hrzich had received various sums of money belonging to the appellant which were deposited in the Hoboken Bank for Savings and prayed for a restraint against the expending of said moneys, while a third cause of action declares that the respondent had possession of certain personal effects to which she was entitled. Both of these claims were withdrawn at the trial and are not considered in this appeal.

Although there was no defense to the petition, the Advisory Master denied the relief asked for on the doctrine of unclean hands as enunciated in *Tyll v. Keller,* 94 *N. J. Eq.* 426. The appellant appeals from this result, contending she never knew or believed she was lawfully married to Heitzman and it was therefore error for the court below to apply the equitable rule as indicated.

The law is firmly established in *Tyll v. Keller, supra,* in an opinion by Chief Justice Gummere in what was then our court of last resort, the Court of Errors and Appeals. The

appellant there was seeking to have a ceremonial marriage declared null and void upon the ground that there was a prior subsisting marriage. The then Chief Justice said:

"Consequently, the appellant was entitled to the relief he sought, provided that when he married the respondent he was ignorant of the fact that she then had a husband living, from whom she had not been divorced. If he had this knowledge, and, notwithstanding it, went through the marriage ceremony with the respondent and co-habited with her for more than a year, the fact that he afterward tired of his bargain did not entitle him to the relief that he now seeks from a court of equity. In order to entitle him to a decree of nullification, he was bound to prove not only the former marriage of the respondent to Bozear, the fact that the latter was alive when he (the appellant) married the respondent, and that Bozear and the respondent had not been divorced; but, further, that when he married the respondent, he did so in ignorance of these facts, and under a belief that she was free to marry him, if she desired to do so. The burden rested upon him to prove not only all of those facts, but also his own innocence of any intentional violation of the law by a preponderance of the evidence;' and this he failed to do, so far as the last factor—i. e., his own innocence—is concerned. Looked at in the light most favorable to him, the best that can be said is that the testimony was in equipoise—that is, that he did not bear the burden which the law imposed upon him of proving his innocence by a preponderance of the evidence."

As pointed out in *White v. Kessler,* 101 *N. J. Eq.* 369, prior to the decision in *Tyll v. Keller, supra,* there existed a line of decisions to the effect that in suits for nullity of marriage contracts which were rendered void *ab initio* by our statutes and where there were no property rights involved, the equitable doctrine ordinarily regarded as adequate to deny relief to a suitor in this court should be subordinated to considerations of public policy demanding that the status of the parties be declared for the protection of public interests. These decisions, however, are overruled by the *Tyll case* as indicated in *Dolan v. Wagner,* 95 *N. J. Eq.* 1, in the supplemental opinion there filed, which was affirmed in 96 *N. J. Eq.* 298.

Common law marriages are no longer recognized (*R. S.* 37:1–10), but that legislation did not change the law as to those marriages which were consummated prior to 1939.

The only remaining question is whether there is merit to the contention that the appellant was not cognizant of her lawful marriage to Heitzman. The proof in this regard con-

sists of her simple assertion to that effect plus an alleged inquiry directed to the man with whom she was about to consummate an unlawful marriage. There is no corroboration by witnesses or fact and circumstance and it can hardly be said that she complied with the required burden of proof. The undisputed record shows she lived and cohabited with Heitzman, adopted and used his name for a period of sixteen years, held herself out as his wife for all this time, and gave birth to nine children of this marriage. This issue was legitimate and she would have been the first to defend it. The Advisory Master below decided her testimony in this respect unbelievable and in that conclusion we concur.

The decree below will be affirmed.

*For affirmance:* Chief Justice VANDERBILT and Justices CASE, HEHER, WACHENFELD, BURLING, and ACKERSON—6.

*For reversal:* None.