30 N.J. Super. 292 (1954)
104 A.2d 455
WILLIE L. DANES, PLAINTIFF-APPELLANT,
v.
ADA HILL SMITH, FALSELY CALLED ADA DANES, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued February 8, 1954.
Decided March 22, 1954.
*295 Before Judges EASTWOOD, JAYNE and FRANCIS.
Mr. Raymond F. Brady argued the cause for the appellant (Miss Inez M. Stanziale, attorney).
Mr. Harry Kay argued the cause for Peter A. Williams, receiver.
No appearance for respondent.
The opinion of the court was delivered by FRANCIS, J.A.D.
Appellant sought an annulment of his marriage to respondent, a partition of real estate which they *296 owned ostensibly as tenants by the entirety, discovery with respect to moneys entrusted to her, and an accounting. A dwelling house on the premises referred to was operated as a rooming house except for the first floor thereof which was used as the home of the parties. During the litigation a receiver was appointed to manage the property.
After a number of hearings respondent received a favorable judgment and this appeal followed.
The parties were married on May 30, 1942 in Newark, New Jersey, by a minister of the gospel. Thereafter they lived together as man and wife, except for three years when the husband was in the armed forces. Danes' army service began in November 1942 and he was discharged in November 1945. Upon the termination of his military career they resumed living together and continued to do so until December 1950, when he separated from respondent. He claimed that the separation took place because he discovered then for the first time that she was already married when she went through the ceremony with him. Some months later this annulment action was instituted.
It appears without dispute that on October 12, 1926 the wife went through a valid ceremonial marriage in North Carolina with one John Smith and that he was still alive at the time of the marriage under consideration.
The testimony is in conflict as to whether Danes was aware that respondent had a husband in North Carolina when he married her. She said he knew about it and in fact assisted her in the making of false statements about her marital history in the application for a marriage license at the bureau in Newark, New Jersey. He denied it.
Smith died on October 23, 1944, while Danes was overseas, and Mrs. Danes testified that she wrote advising him of the fact. Danes admitted receiving the letter which he said simply told him of the death of John Smith. He knew a number of John Smiths and was not aware that she was referring to another husband.
There is further conflict in the testimony as to whether there was conversation between them about the elimination *297 of the impediment to their marriage upon Danes' return to this country and after his discharge from service. In any event, as already indicated, they continued living as man and wife until December 1950 when according to her he left, saying he had another woman.
After considering the facts recited and all the circumstances in the case, the trial court concluded that Danes knew his wife had a living husband when he married her and was therefore estopped to question the validity of their marriage. Our examination of the record discloses no justifiable basis for interference with this conclusion. Capozzoli v. Capozolli, 1 N.J. 540 (1949); Sabia v. Sabia, 16 N.J. Super. 273 (App. Div. 1951).
Aside from the determination of the issue of credibility of the parties on the subject of knowledge of the previous marriage, the decision of the trial court was predicated primarily upon the legal principle appearing in Tonti v. Chadwick, 1 N.J. 531 (1949); Smith v. Hrzich, 1 N.J. 1 (1948); Keller v. Linsenmyer, 101 N.J. Eq. 664 (Ch. 1927); Dolan v. Wagner, 96 N.J. Eq. 298 (E. & A. 1924); Tyll v. Keller, 94 N.J. Eq. 426 (E. & A. 1923).
These cases demonstrate the law of New Jersey to be that where a person enters into a ceremonial marriage with another, knowing of the existence of an impediment to lawful wedlock and thereafter cohabits with the spouse thus acquired, he will be barred from questioning the legality of the union under the doctrine of estoppel or unclean hands. In our judgment the factual conclusion reached here amply justified the application of the doctrine so as to deny the claim for annulment.
The trial court decided additionally that even if Danes found out for the first time that his wife was under the disability of an existing marriage when he married her, his cohabitation with her in New Jersey after the removal of the impediment, matrimonially meant, made them man and wife. While this ruling was not necessary to the disposition of the case in view of the determination already alluded to, it was predicated upon Tegenborg v. Tegenborg, 26 N.J. *298 Super. 467 (App. Div. 1953), and would appear to be a fair construction of the opinion in that case.
The broad language of the Tegenborg case apparently was taken to mean that if, at the present time, a ceremonial marriage is entered into while there is an existing impediment to its validity, and the parties continue to live together with matrimonial intent after the impediment is removed, they will be considered as legally husband and wife from that time by virtue of a common-law marriage.
This was the law prior to the enactment of N.J.S.A. 37:1-10 in 1939. Margulies v. Margulies, 109 N.J. Eq. 391 (Ch. 1931); Burger v. Burger, 105 N.J. Eq. 403 (Ch. 1929); Dolan v. Wagner, supra; Robinson v. Robinson, 84 N.J. Eq. 201 (E. & A. 1915); Chamberlain v. Chamberlain, 68 N.J. Eq. 736 (E. & A. 1905). The statute declares that after December 1, 1939, no marriage
"shall be valid unless the contracting parties shall have obtained a marriage license as required by section 37:1-2 of this Title, and unless, also, the marriage, after license duly issued therefor, shall have been performed by or before any person, religious society, institution or organization authorized by section 37:1-13 of this Title to solemnize marriages; and failure in any case to comply with both prerequisites aforesaid, which shall always be construed as mandatory and not merely directory, shall render the purported marriage absolutely void."
No case has yet been decided in our state courts as to the effect of this enactment on a situation where the parties complied with the formal requisites of license and ceremony in good faith unconscious of an obstacle in the path of a valid marriage, and then continued to live together as man and wife after the removal of the bar. Is the union of these persons void, regardless of their belief and conduct? Has the strong public policy manifested by the statute completely overcome the strong public policy of the common law in favor of recognition of marriage in such cases? Unquestionably the Legislature has the authority to abrogate the common-law doctrine completely if it sees fit to do so.
Strangely enough, a holding that a common-law marriage is barred by the statute in the instance described would bring *299 about a most anomalous situation from a public policy stand-point. When, as here, parties to a ceremonial marriage enter into the relation with knowledge that an impediment exists, they are barred by estoppel or unclean hands from asserting its invalidity, and their status is unaffected by the statute. Yet where two persons in good faith undergo a ceremonial marriage unaware of an invalidating obstacle and that obstacle is subsequently removed, continuance of cohabitation matrimonially meant will accomplish nothing for them; their state will still be concubinage. It has been suggested that in such cases there is social and legal justification for the recognition of common-law marriage. Annual Survey of American Law, 1952, p. 665.
Perhaps some indication of the intended impact of the statute on the problem is furnished by R.S. 9:15-2 which renders legitimate the children of a bigamous marriage ceremonially performed, even where the marriage is annulled, whereas under N.J.S. 2A:34-20 the children of a bigamous common-law marriage are illegitimate whether the marriage is annulled or not.
The Federal District Court for New Jersey declared that the statute controlled and the relation between the parties was one of concubinage, irrespective of their good faith in contracting the marriage and their continued cohabitation upon the removal of the impediment. Brown v. United States, 72 F. Supp. 153 (1947), affirmed 164 F.2d 490 (C.C.A. 3 1947), certiorari denied 333 U.S. 873, 68 S.Ct. 902, 92 L.Ed. 1149 (1948). In view of the state of the record here, it is not necessary to decide the question and it is reserved until the issue is directly presented.
The problem is discussed or posed here only to point out that it was neither presented, decided, nor intended to be decided in the Tegenborg case. In that case the ceremonial marriage between the parties took place in Florida. When the impediment to the validity of the marriage was removed they continued to live together as husband and wife in that state for some time before they moved to New Jersey. Common-law marriages are valid in Florida. Warren v. *300 Warren, 66 Fla. 138, 63 So. 726 (Sup. Ct. 1913); McClish v. Rankin, 153 Fla. 324, 14 So.2d 714 (Sup. Ct. 1943); Carretta v. Carretta, 58 So.2d 439 (Fla. Sup. Ct. 1952); Porter v. La Fe, 68 So.2d 602 (Fla. Sup. Ct. 1953). And the courts of that state have specifically followed the New Jersey rule set forth in Chamberlain v. Chamberlain, supra. Jones v. Jones, 119 Fla. 824, 161 So. 836, 104 A.L.R. 1 (Sup. Ct. 1935), citing with approval Smith v. Reed, 145 Ga. 724, 89 S.E. 815, L.R.A. 1917a, 492 (Sup. Ct. 1916), which adopted the holding of the Chamberlain case. Consequently, since the Tegenborgs were legally husband and wife in Florida, they occupied the same status here.
The Tegenberg opinion did not make clear to the bar and to the trial courts that the 1939 statute banning common-law marriage was not at all involved in that case, and that there was no intention present at the time to indicate what effect the legislation would have had if the entire matter had been localized in New Jersey.
Title to the rooming house premises was acquired in the names of the Danes as husband and wife. Thus in form at least they became tenants by the entirety. The purchase was made in 1948 after the death of the first husband, Smith, and while the parties were living together.
As set forth above, appellant's complaint sought partition of the realty on the ground that there being no valid marriage, the title was held as tenants in common. Since the trial court concluded that Danes was estopped to deny the marriage and also that the continued cohabitation after the removal of the impediment created a valid marriage, he denied partition. More specifically, the denial was predicated upon the conclusion that the marriage having been validated prior to the acquisition of title, the conveyance created a tenancy by the entirety; and since an incident of such a tenancy is the right of survivorship, the compulsory partition sought could not be granted. As is the case with the annulment action, it is not necessary to pass upon the validation of the marriage through the death of Smith; the estoppel theory seems an adequate solution of the issue.
*301 The law is clear that if the parties to a deed are not actually husband and wife, their designation as such even in the honest belief that they are married establishes a tenancy in common and not a tenancy by the entirety. Anno. 92 A.L.R. 1420; 2 American Law of Property, § 6.6, p. 23. The rule was followed in New Jersey where a marriage contracted in good faith was invalid because of an impediment and the realty was deeded to the individuals as husband and wife while the impediment existed. And the subsequent removal of the impediment so as to validate the marriage did not transform the status from a tenancy in common to one in the entirety. Burger v. Burger, supra, 105 N.J. Eq. 403 (Ch. 1929).
Research has revealed no case involving the effect of an estoppel or the application of the doctrine of unclean hands in such a situation in a controversy between the immediate parties. Here the law has precluded Danes from denying that he and his wife are lawfully married. Should not the same bar be applied in any civil controversy, the determination of which involves the validity of the marriage? Certainly to have consistency, an object much to be desired in the law, it should operate in every controversy between them and those in privity with them. Thus where the effect of a deed to them as husband and wife is in dispute between them, since they cannot be heard to say they are not lawfully married they ought not be permitted to deny that they are tenants by the entirety. This conclusion does not do violence to the traditional notions of such a tenancy. It does not permit an invalid marriage to create a tenancy by the entirety; it simply prevents a denial of the existence of that type tenancy  again a result to be desired in the interest of land title stability. Accordingly no error was committed in refusing to order partition.
Likewise, in our judgment the partition issue is not moot because of the foreclosure of the mortgage hereinafter discussed. The record discloses that the sheriff's sale produced a substantial surplus beyond the mortgage debt, which is available for distribution according to the respective *302 interests of the parties. The extent of those interests depends upon the nature of the tenancy created by the deed. Servis v. Dorn, 76 N.J. Eq. 241 (Ch. 1909); Zelley v. Zelley, 101 N.J. Eq. 37 (Ch. 1927); Morris v. Glaser, 106 N.J. Eq. 585, 592 (Ch. 1930), affirmed 110 N.J. Eq. 661 (E. & A. 1932); Vineland Savings & Loan Assn. v. Felmey, 12 N.J. Super. 384, 392 (Ch. Div. 1950).
During the pendency of these proceedings and while the receiver was in charge of the premises in question, a mortgage thereon was foreclosed and title was acquired at the sheriff's sale by a corporation known as Henry Realty Company. Appellant, claiming that the receiver was negligent in the discharge of his office and that such negligence was responsible for the loss of the property and monetary losses flowing therefrom, sought to surcharge him.
It appears that the mortgage was in default when the receiver took over and that he made some payments thereon out of the proceeds of the rooming house business. However, the delinquency persisted and increased and the foreclosure followed.
The original purchase price of the premises in 1948 was $11,500 and proof was offered to show that further moneys were expended for repairs and improvements. At the foreclosure sale the sales price was $11,900.
Considerable testimony was taken in the trial court on the subject of the receiver's conduct and the possible relation between it and losses alleged to have resulted to appellant. The court declined to surcharge him.
The record provides a basis for some criticism of the receiver's lack of zealousness in the discharge of the obligation he has assumed. However, the trial court found that appellant had not sustained the burden of establishing a default and resulting damage. We have reviewed the record and find no adequate basis for disturbing the finding.
In addition to partition of the real estate, the second count of the complaint sought an accounting and discovery from the respondent with respect to moneys alleged to have been entrusted to her. The count was later amended to include a *303 claim for accounting of the furniture and furnishings of the rooming house.
There was a sharp dispute in the testimony as to the ownership of the articles referred to. The conflict was resolved in favor of respondent by the trial court. The issue of credibility played a major factor in the determination and we are duty bound to give due consideration to the resolution of that issue by the arbiter who saw and heard the witnesses. It is plain from the proof that many untruths were told and we do not find sufficient cause for concluding that the finding should have been otherwise.
Although the partition aspect of the case and the furniture and furnishings claims were disposed of, no disposition was made of the money accounting feature of the second count, and the judgment simply recites that the complaint for "partition and accounting be and hereby is dismissed." Under the circumstances the matter must be remanded for determination of the accounting action.
The original complaint was filed on May 17, 1951. On January 14, 1953, after some hearings in the matter, appellant applied for leave to further amend and supplement the already amended complaint. The proposed amendment and supplement was an elaborate one which introduced a new cause of action into the record and added additional individual and corporate defendants. To bring these new defendants in required the issuance and service of summonses.
Granting or denial of leave to enlarge the complaint at the late date referred to, even though much of the factual premises for the alleged causes of action arose during the pendency of the suit, rested in the discretion of the court. The trial court denied leave to do so and we find no basis for disturbing the exercise of that discretion.
The judgment is affirmed except as to the accounting aspect of the second count and the record is remanded for determination of that issue.
JAYNE, J.A.D. (dissenting in part).
It is in only one particular that my conception of the applicable law constrains *304 me to disagree with the conclusions expressed by my learned associate Judge Francis.
The plaintiff sought, inter alia, a judgment authorizing the partition of the real estate conveyed to the parties by a deed of conveyance in which they are represented to be husband and wife. That measure of relief was denied the plaintiff in the Chancery Division and Judge Francis expresses in his opinion the conviction that the denial should be affirmed. I cannot concur.
The conclusion that the judgment should be affirmed in that respect appears to be produced by a functional rationale of consistency and homogeneity that since the plaintiff will not be awarded a judgment nullifying the void marriage, the ownership of the realty is that of tenants by the entirety. I think that in the law that cannot be so.
Initially, let me state that I have always entertained the belief that the inability in certain circumstances of a spouse to obtain a decree annulling a void marriage is more responsive in equity to the doctrine of unclean hands than appropriately attributable to the doctrine of estoppel. Vide, Tonti v. Chadwick, 1 N.J. 531, 536 (1949). I decline to suppose that there is any type of estoppel that permits bigamy. The refusal of the court to annul a void marriage under equitable principles certainly does not validate the unlawful marriage. The citations of many of our pertinent decisions are assembled in 11 N.J. Practice (Herr, 2d ed.), § 845, pp. 230, et seq. See, also, Brown v. United States, 72 F. Supp. 153 (D.C.N.J. 1947), affirmed 164 F.2d 400 (C.C.A. 3 1947), certiorari denied 333 U.S. 873, 68 S.Ct. 902, 92 L.Ed. 1149 (1948). Whether the policy of invoking in the present day the doctrine of unclean hands in these sui generis nullity cases is conducive to the public welfare is at least debatable, but in the disposition of that branch of the present case I am obedient to existing precedents.
I have been taught to understand that a tenancy by the entirety arises only from a conveyance or devise to a man and a woman who are husband and wife at the time of such transfer. Just as the origination of this estate must *305 emanate from a transfer to husband and wife, so its continuance rests upon the unbroken existence of that relationship. It is perhaps the most compact form of concurrent ownership in the law. It is distinguishable in its unities from joint tenancies and tenancies in common.
As far back as our books yield us a means of research concerning this peculiar estate, coverture has been recognized as the seed of its creation and the indispensable element of its existence. I need pull from the shelf only a few illustrative decisions. Den ex dem. Hardenbergh v. Hardenbergh, 10 N.J.L. 42 (Sup. Ct. 1828); McDermott v. French, 15 N.J. Eq. 78 (Ch. 1862); Hubatka v. Meyerhofer, 79 N.J.L. 264 (Sup. Ct. 1910), reversed on other grounds, Hubatka v. Maierhoffer, 81 N.J.L. 410 (E. & A. 1911); Burger v. Burger, 105 N.J. Eq. 403 (Ch. 1929); Casini v. Lupone, 8 N.J. Super. 362 (Ch. Div. 1950); Jordan v. Mohan, 12 N.J. Super. 376, 378 (Ch. Div. 1951), reversed on factual finding, 15 N.J. Super. 513 (App. Div. 1951). A more positive statement of the essentiality of the existence of the marital relationship between the grantees than that contained in the decision in the Hubatka case could not be reasonably expected. A tenancy by the entirety without coverture is as unimaginable as a tree without a root.
It is evident that the parties to the present action who were the grantees in the deed were not husband and wife at the time of the conveyance of the real estate to them. I cannot agree that the doctrine of unclean hands has the legal potency to procreate a tenancy by the entirety between unmarried grantees of real estate. If the doctrine cannot bestow validity upon a void marriage or justify an award of alimony to an unmarried woman, I am unable to pereceive by what legitimate process it can synthetically construct a tenancy by the entirety. Cf. Tonti v. Chadwick, supra. I would not extend the doctrines of unclean hands or estoppel to in effect metabolize a tenancy in common into one by the entirety or artificially engraft upon the former the qualities of the latter.
*306 The law only forbids the involuntary partition of real property owned by the entirety during the existence of coverture. Gery v. Gery, 113 N.J. Eq. 59 (E. & A. 1933); Platt v. Platt, 93 N.J. Eq. 395 (Ch. 1922). Joint tenancies are not favored in our jurisdiction and in my judgment these parties are tenants in common. The plaintiff should have been granted the right to a partition of the property. The judgment under review should in that respect be reversed.
I am authorized by Judge EASTWOOD to state that he unites with me in this dissent.