**NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2605-17T1

JENNIFER K. ALLEN,
Administratrix of the
Estate of NORMA ALLEN,
deceased,

      Plaintiff-Respondent,

v.

ESTATE OF DONALD L. ALLEN,
and KAREN DILLARD ALLEN,

      Defendants-Appellants.

_____

> Argued December 4, 2018 – Decided January 7, 2019
>
> Before Judges Yannotti and Gilson.
>
> On appeal from Superior Court of New Jersey, Chancery Division, Monmouth County, Docket No. C-000060-16.
>
> James M. Nardelli argued the cause for appellants (Parsons & Nardelli, attorneys; James M. Nardelli, on the briefs).

John L. Bonello argued the cause for respondent (Manna & Bonello, PA, attorneys; Jeff Thakker, of counsel; John L. Bonello, on the brief).

PER CURIAM

Defendants appeal from orders of the Chancery Division which granted plaintiff's motion for summary judgment and denied defendants' cross-motion for summary judgment. The Chancery Division judge determined that the Estate of Norma Allen has sole legal and equitable title to certain real property on Riverview Avenue in the Borough of Little Silver. We affirm.

## I.

This appeal arises from the following facts. In 1961, Norma Allen and Donald L. Allen were married. Three children were born of the marriage – David, Drew, and Jennifer. On July 18, 1972, Norma and Donald executed a divorce agreement, which provided that Norma would have custody of the children, and Donald would pay $100 "per month, per child, for the support and maintenance of [the] children." The agreement further provided that Donald would pay Norma $200 per month in alimony, and the marital debts owed as of the date of the agreement.

The agreement also stated that

> [Donald] shall, subsequent to the date of the execution
> of this agreement, and as soon as practicable thereafter,

2

aid [Norma] in securing a permanent home for [Norma] and the minor children in a location to be determined by both parties. The gross price of said home shall not exceed $35,000.00 and the down payment which [Donald] shall be required to pay shall not exceed the sum of $6500.00 and be not less than $6,000.00. [Norma] shall then be responsible for the mortgage payments. [Donald] shall purchase [the] home in his own name because of his ability to obtain financing, and shall thereafter immediately deed said property to [Norma] by Warranty Deed. [Norma] agrees that should at any time she remarry, then and in this event, said home shall be placed for sale by [Norma] and any equity therefrom divided equally between [Donald] and [Norma]. Should [Norma] either sell or transfer said home without the written consent of [Donald] then said property is to be appraised and a reasonable equity determined. [Norma] shall then pay one-half of such equity.

In addition, the agreement provided that Donald would "immediately sell the present home . . . and from the equity therefrom make the down payment on the new home for [Norma] and children as hereinbefore stipulated." The agreement further provided that all of the personal property in the marital home, except Donald's "personal effects," shall be the "permanent property" of Norma and the minor children.

On September 6, 1972, the Superior Court of the State of Georgia issued the final judgment of divorce, which incorporated Donald and Norma's agreement. Five days later, on September 11, 1972, Elliot Enterprises, Inc.

3

transferred title to the property in Little Silver to Donald and Norma, who were identified in the deed as "husband and wife." The purchase price of the Little Silver property was $36,000. Karen Dillard Allen, who eventually became Donald's third wife, asserted that Donald made the down payment, which she claimed was $7200.

On September 11, 1972, Donald and Norma granted a mortgage to Monmouth Savings and Loan Association to secure repayment of a loan for $28,800. The mortgage identified Donald and Norma as "husband and wife." Norma made the payments on the loan, which was fully paid on September 2, 1997.

It is undisputed that Norma lived in the house in Little Silver until her death. She paid the property taxes, homeowner's insurance, and general property maintenance. She did not remarry. There is no evidence that Donald ever entered the home; however, he did pay for the installation of a fence on the property, ostensibly for the well-being of the children, or other children for whom Norma provided daycare. Drew was Donald's business partner from 1993 to 1998. He stated that Donald had suggested that he considered the Little Silver home to be Norma's property.

4

Donald remarried and after living for a time in Georgia, moved with his second wife to Rumson, New Jersey. Donald's second wife died, and he married Karen. In either 1998 or 1999, Donald and Karen relocated to Florida. Karen claimed Donald told her about his interest in the Little Silver property. According to Karen, Donald said he had a one-half interest in the property, which he would receive when "Norma sold the property, remarried, moved, or died." Donald told Karen his "half" interest in the property would be hers someday, if he died before Norma.

On November 14, 2001, Donald executed a last will and testament. He bequeathed his entire estate to Karen, and named her as the estate's personal representative. Donald died on November 22, 2001. After Donald's funeral, Drew claims he asked Karen whether she was interested in the Little Silver property. According to Drew, Karen said she had no interest in the property. Karen denied every making that statement.

Thereafter, Karen had Donald's will admitted to probate in the State of Florida. The will does not mention the Little Silver property. Karen claims that after Donald's death, she contacted an attorney to determine if she had an interest in the property. She claims the attorney told her she could not do anything regarding the property until Norma remarried, sold the property, or died.

A-2605-17T1

In 2014, Drew learned that Norma had not been paying property taxes and was in danger of losing her home. At some point during 2014, Norma signed an agreement to sell the property to a company for $80,000. Drew stated that an attorney contacted the company and advised that Norma was an elderly person and she did not understand the agreement. Drew states the company was never heard of again. In December 2014, Drew paid the back taxes on the property.

On April 15, 2016, Norma filed a complaint in the Chancery Division against Donald's Estate and Karen, seeking a judgment declaring that she has sole legal and equitable title to the Little Silver property. Norma advanced several alternative theories for her claim. Among other things, she alleged that she and Donald intended that she alone would have title to the property, and that Donald held his interest under the deed in constructive trust for her.

Norma died on March 17, 2017, and the trial court thereafter entered an order substituting Jennifer, the Administratrix of Norma's Estate, as plaintiff in this action. Defendants eventually filed an answer and counterclaim, alleging that Donald's Estate is entitled to one-half of the equity in the property.

In November 2017, the parties filed cross-motions for summary judgment. In January 2018, the Chancery Division judge heard oral arguments on the motions, and placed her decision on the record. The judge found that the legal

title reflected in the deed dated September 11, 1972, was inconsistent with Donald and Norma's understanding, as evidenced by their divorce agreement. The judge noted that Norma had lived in the house in Little Silver throughout her life. She paid the mortgage loan in full, as well as the property taxes and other expenses.

The judge also noted that after Donald died, Norma continued to act in conformity with the agreement, and until this litigation, neither Donald nor his Estate asserted a formal claim for the property. The judge found that, under the circumstances, the appropriate remedy is a constructive trust, with Donald deemed to have held his interest in the property in trust for Norma. The judge therefore found that Norma's Estate has sole legal and equitable title to the property.

Accordingly, the judge entered orders granting plaintiff's motion for summary judgment, and denying defendants' cross-motion for summary judgment. This appeal followed.

II.

On appeal, defendants first argue that the trial court erred by granting summary judgment to Norma's Estate because discovery was not complete. Defendants assert they served a subpoena duces tecum upon the company

believed to have negotiated with Norma in 2014 for the sale of the property. They also assert they did not have an opportunity to depose Jennifer, Drew, or Drew's wife.

Ordinarily, summary judgment should not be granted if discovery is incomplete. Velantzas v. Colgate-Palmolive Co., 109 N.J. 189, 193 (1988) (citing Martin v. Educ. Testing Serv., Inc., 179 N.J. Super. 317, 326 (Ch. Div. 1981), overruled on other grounds by Brady v. Dep't of Pers., 149 N.J. 244, 261-62 (1997)). The non-moving party must, however, show that additional discovery will elicit critical facts that will affect the outcome of the matter. See Badiali v. N.J. Mfrs. Ins. Grp., 220 N.J. 544, 555 (2015) (citing Estate of Wellington, 359 N.J. Super. 484, 496 (App. Div. 2003)); Tisby v. Camden Cty. Corr. Facility, 448 N.J. Super. 241, 247 (App. Div.) (citing Badiali, 220 N.J. at 544), certif. denied, 230 N.J. 376 (2017).

In this case, the trial court was required to determine whether Norma's Estate has sole legal and equitable title to the property. The facts material to that determination are essentially undisputed. Those facts consist of the terms of Norma and Donald's divorce agreement, the judgment of divorce entered by the Georgia court, the deed to the property naming Donald and Norma as

"husband and wife," the mortgage, and Norma and Donald's actions regarding the property.

Defendants have not shown that Jennifer, Drew, or Drew's wife have any other information that is material to this dispute. They also have not shown that the company that negotiated with Norma to purchase the property has any information material to this dispute. Therefore, we reject defendant's contention that the trial court prematurely ruled on plaintiff's motion for summary judgment.

III.

Next, defendants argue that the trial court erred by granting summary judgment to plaintiff. Defendants argue that although the deed refers to Norma and Donald as "husband and wife," Donald and Norma held the property as tenants in common, not as tenants by the entirety. Defendants therefore assert that when Norma died, Donald's Estate retained a one-half interest in the property.

"On appeal, we accord no special deference to a trial judge's assessment of the documentary record, and instead review the summary judgment ruling de novo as a question of law." Davidovich v. Isr. Ice Skating Fed'n, 446 N.J. Super. 127, 159 (App. Div. 2016) (citing W.J.A. v. D.A., 210 N.J. 229, 237-38 (2012);

Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)). In determining whether the trial court erred by granting summary judgment, we apply the same standard that the trial court must apply in ruling on the motion. Conley v. Guerrero, 228 N.J. 339, 346 (2017) (citing Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016)).

Summary judgment must be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. R. 4:46-2(c). "An issue of fact is genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact." Ibid.

"A tenancy by the entirety is a form of joint property ownership available only to spouses that is created 'when property is held by a husband and wife with each becoming seized and possessed of the entire estate.'" Jimenez v. Jimenez, 454 N.J. Super. 432, 436 (App. Div. 2018) (quoting N.T.B. v. D.D.B., 442 N.J. Super. 205, 218 (App. Div. 2015)). If a husband and wife hold property as tenants by the entirety, each has a right of survivorship; therefore, if either

spouse dies, the other takes the whole.  See ibid. (quoting Capital Fin. Co. of Del. Valley, Inc. v. Asterbadi, 389 N.J. Super. 219, 227 (Ch. Div. 2006)).

However, New Jersey courts have long held that if individuals take property as tenants by the entirety, but are not married, they take the property as tenants in common, absent specific language creating a joint tenancy.  See, e.g., Balazinski v. Lebid, 65 N.J. Super. 483, 488 (App. Div. 1961); Hubatka v. Meyerhoffer, 79 N.J.L. 264, 264-65 (Sup. Ct. 1910), rev'd on other grounds, 81 N.J.L. 410, 412 (E. & A. 1911); Burger v. Burger, 105 N.J. Eq. 403, 406 (Ch. 1929).  Tenants in common do not have a right of survivorship.  Balazinski, 65 N.J. Super. at 488-89.

Here, is undisputed that Donald and Norma's marriage was dissolved on September 6, 1972, which was five days before they acquired the Little Silver property, and the deed does not contain specific language creating a joint tenancy.  Since Donald and Norma were not married at that time, they did not take the property as tenants by the entirety; instead, they took the property as tenants in common.  However, that conclusion did not preclude the trial court from holding that Norma's Estate has sole legal and equitable title to the property.

11

## IV.

Defendants argue that the trial court erred by imposing a constructive trust because, according to defendants, plaintiff failed to establish the elements required for that remedy. We disagree.

"A constructive trust is a remedial device through which the 'conscience of equity' is expressed [and] it will be imposed when a person has acquired possession of or title to property under circumstances which, in good conscience, will not allow the property's retention." Thompson v. City of Atlantic City, 386 N.J. Super. 359, 375-76 (App. Div. 2006) (citing Flanigan v. Munson, 175 N.J. 597, 608 (2003); Stewart v. Harris Structural Steel Co., Inc., 198 N.J. Super. 255, 266 (App. Div. 1984)), aff'd as modified, 190 N.J. 359 (2007). "The circumstances in which a constructive trust may be imposed are as extensive as required to reach an equitable result." Id. at 376.

"[A] constructive trust is a powerful tool to be used only when the equities of a given case clearly warrant it." Flanigan, 175 N.J. at 611. Thus, the party asserting that a constructive trust should be imposed bears the burden of establishing its right to the remedy with clear and convincing evidence. Dessel v. Dessel, 122 N.J. Super. 119, 121 (App. Div. 1972), aff'd o.b., 62 N.J. 141 (1973). Under this standard, the party seeking the remedy "should produce in

12

the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Liberty Mut. Ins. Co. v. Land, 186 N.J. 163, 169 (2006) (quoting In re Purrazzella, 134 N.J. 228, 240 (1993)).

"[T]he imposition of a constructive trust requires a two-part finding that the res has been received or retained through a 'wrongful act' which 'unjustly enriches' the recipient." Thompson, 386 N.J. Super. at 376-77 (citing Flanigan, 175 N.J. at 608). A wrongful act is "usually, though not limited to, fraud, mistake, undue influence, or breach of a confidential relationship," D'Ippolito v. Castoro, 51 N.J. 584, 589 (1968) (citing Neiman v. Hurff, 11 N.J. 55, (1952)), and can include "innocent misstatements, or even simple mistakes." Flanigan, 175 N.J. at 609 (quoting Dan B. Dobbs, Remedies, § 4.3 (1973)).

Here, Donald and Norma's divorce agreement required Donald to purchase a permanent home for Norma in his own name. The agreement further required Donald to immediately transfer the property to Norma. By failing to do so, Donald committed a "wrongful act."

Moreover, Donald's Estate would be unjustly enriched if it is permitted to retain an interest in the property. The divorce agreement required Donald to make the down payment using the equity of the formal marital home. In addition, Norma paid the mortgage loan on the property, as well as the property

taxes and other expenses. The divorce agreement provides that Donald would only have an interest in the equity in the home if Norma sold the property or remarried. She did neither. Under the circumstances, it would be inequitable for Donald's Estate to retain an interest in the property. Therefore, the trial court did not err by finding that Donald and his Estate held his interest in the property in constructive trust for Norma.

The decision in Flanigan supports our conclusion. In that case, the divorcing couple executed a property settlement agreement (PSA) that required either party to designate their children as beneficiaries of any life insurance policies obtained through employment. Id. at 601. The wife obtained two life insurance policies through her employer, but she did not designate any beneficiaries. Id. at 601-02. The wife remarried and when she died, her employer distributed the proceeds of the insurance policies to her new spouse. Id. at 603.

We determined that the new spouse held the life insurance proceeds in constructive trust for his wife's children. Id. at 606. The Supreme Court affirmed. Id. at 611-12. The Court reasoned that the wife's "failure to name her children as beneficiaries on the two policies was a wrongful act." Id. at 608. The Court determined that the wife's "breach of the [PSA] wrongfully deprived

14

her children of the insurance proceeds, satisfying the first prong of the test for equitable relief." Id. at 609.

The Court also held that the second prong of the test was satisfied because the new husband was not entitled to the proceeds of the life insurance policies, which were "earmarked exclusively for [the children] once their mother obtained the two policies through her employer." Ibid. The Court held the high standard for imposing a constructive trust was met because "[t]he property settlement agreement . . . unambiguously establish[ed the children's] right to the proceeds at issue." Id. at 611.

That same conclusion applies in this case. As noted, Donald and Norma's divorce agreement unambiguously requires Donald to purchase a home for Norma. The agreement makes clear that the property would be hers and hers alone, unless she remarried or sold the property. However, the deed transferred title to Donald and Norma, and Donald wrongfully failed to fulfill his obligation under the agreement to ensure that Norma had sole legal title. We therefore conclude that under these circumstances, Donald's Estate would be unjustly enriched if allowed to retain an interest in the property.

A-2605-17T1

V.

Defendants further argue that Donald and Norma agreed to modify the divorce agreement and allow Donald to retain a one-half interest in the property. We disagree.

Under Georgia law, a "fixed allocation of resources between spouses" is not subject to modification, and property rights that are subject to modification require court intervention. Spivey v. McClellan, 378 S.E.2d 123, 124 (Ga. 1989). Furthermore, New Jersey law generally allows for modification of a PSA, but the court must approve any such modification. See Miller v. Miller, 160 N.J. 408, 418 (1999) (citing Conforti v. Guliadis, 128 N.J. 318, 323 (1992); Carr v. Carr, 120 N.J. 336, 346-49 (1990); Rothman v. Rothman, 65 N.J. 219, 229 (1974)).

Whether we apply Georgia or New Jersey law, the result here is the same. Assuming the relevant provision of Donald and Norma's divorce agreement is subject to modification, any modification of these property rights would not be recognized under Georgia law because the Georgia court did not approve the change. Similarly, under New Jersey law, the divorce agreement remains in effect because a court never approved a modification of the agreement.

Defendants nevertheless argue that Donald and Norma effectively agreed to change the divorce agreement. Parties to a contract may agree to a modification in order to make "limited changes or amendments to" the agreement. Cty. of Morris v. Fauver, 153 N.J. 80, 99 (1998) (citing Merickel v. Erickson Stores Corp., 95 N.W.2d 303, 306 (Minn. 1959)). A "modification can be proved by an explicit agreement to modify, or . . . by the actions and conduct of the parties, so long as the intention to modify is mutual and clear." Ibid. (citing 17A C.J.S. Contracts § 375 (1963)).

Here, the record shows that Donald and Norma deviated from the provisions of the agreement regarding the amount of the purchase price, the down payment, and the mortgage loan. However, there is insufficient evidence to permit a rational fact-finder to find that Norma agreed to modify the key provision of the agreement, which required Donald to transfer title to the property to her.

Defendants nevertheless argue that because Norma did not seek to compel Donald to execute a deed transferring title to her, she agreed that he would retain a one-half interest in the property. However, Norma may have thought there was no need to seek such relief. The divorce agreement states clearly and unequivocally that the property is to be her property. She was living in the

home, and she paid the mortgage loan, property taxes, and other expenses for the property. She could reasonably assume the property was hers and hers alone.

Defendants also claim Donald told Karen and her children that he had an ownership interest in the property. On the other hand, Jennifer and Drew assert that Donald told them the house belonged to Norma. In any event, Donald's alleged statements to Karen and her children may be evidence that Donald thought he had an interest in the property, but those statements do not support an inference that Norma agreed to modify the divorce agreement, thereby allowing Donald to retain a one-half interest in the property.

VI.

Defendants further argue that the deed to the property represents a novation, which supersedes the relevant provisions of the divorce agreement. We note that plaintiff filed a motion to strike the section of defendants' reply brief in which this argument was raised. Plaintiff argues that it is improper for defendants to raise this issue for the first time in a reply brief. See L & W Supply Corp. v. DeSilva, 429 N.J. Super. 179, 186 n.2 (App. Div. 2012) (citing Goldsmith v. Camden Cty. Surrogate's Office, 408 N.J. Super. 376, 387 (App. Div. 2009)). We reserved our decision on the motion. We have decided to deny the motion and address the issue.

A-2605-17T1

"The elements of a novation are: (1) a previously valid contract; (2) an agreement to make a new contract; (3) a valid new contract; and (4) an intent to extinguish the old contract." Wells Reit II-80 Park Plaza, LLC v. Dir., Div. of Taxation, 414 N.J. Super. 453, 466 (App. Div. 2010) (citing T & N, plc v. Pa. Ins. Guar. Ass'n, 44 F.3d 174, 186 (3d Cir. 1994); In re Timberline Prop. Dev., Inc., 115 B.R. 787, 790 (Bankr. D.N.J. 1990)). In this case, there is no evidence that Donald and Norma agreed to replace their divorce agreement with an entirely new contract. Thus, the deed is not a novation.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2605-17T1